# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LAWRENCE C. TRIMM, III, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| versus | § | CIVIL ACTION NO. 7:13-138 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of | § | |
| Social Security, | § | |
| | § | |
| *Defendant*. | § | |

## **REPORT AND RECOMMENDATION**

Lawrence C. Trimm, III ("Trimm") seeks review of an adverse decision on his application for disability-based benefits under the Social Security Act.[1]

### I. Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g).

---

[1] Trimm applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. § 1382c. Supplemental Security Income benefits provide an additional resource to assure that disabled individuals' income does not fall below the poverty line. Applicants seeking benefits under this statutory provision must prove "disability" within the meaning of the Social Security Act, which defines disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. § 1382c(a)(3)(A).

Further, Congress directs reviewing courts to take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706; *see also* 28 U.S.C. § 2111 (directing that judgments given upon examination of records be "without regard to errors or defects which do not affect the substantial rights of the parties"); *see also* FED. R. CIV. P. 61 (stating that "the court must disregard all errors and defects that do not affect any party's substantial rights").

## II. Background

Trimm, born in 1987, consistently required additional help in school due to learning difficulties. (T. 32-33).[2] By second grade, he was receiving remedial support in reading and math due to poor performance on achievement tests. (T. 117). At that time, school personnel noted behavioral concerns, including sad/unhappy, lack of interest, and distractibility. (*Id.*). A school psychologist opined that Trimm was within the borderline range of cognitive functioning. (T. 119-20), and recommended that Trimm's school psychological evaluation be shared with his pediatrician to assess the possibility of physically-based deficits in attention. (T. 121-22). Trimm's classification for services was "speech impaired," and he received special education programming, including resource room services, speech services, self contained reading services, and a teacher aide. (T. 126, 134, 141, 144, 159, 163, 170, 172, 182). Cognitive testing in 1998 continued to reveal borderline intelligence. (T. 271).

---

[2] "T." followed by a number refers to the page of the administrative record. (Dkt. No. 6).

Trimm dropped out of school after the 10th grade, and failed a General Educational Development ("GED") test.[3] (T. 32-33, 40). Trimm has worked only for brief periods at fast food restaurants and as a ground assistant for an insulation company. (T. 33-35, 195, 211). In November, 2010, he was arrested for unlawful imprisonment and endangering welfare of a child, arising from a dispute with his then-girlfriend in front of her daughter. (T. 284). The charges were reduced to a misdemeanor, Trimm was placed on "interim" probation, and referred to Ogdensburg Mental Health Clinic. (*Id.*).

Shortly thereafter, Trimm applied for SSI benefits, alleging disability due to an "anger problem, learning disability, speech problems, and problems comprehending things," commencing February 1, 2006. (T. 106, 194). After an evidentiary hearing, administrative law judge John P. Ramos ("ALJ Ramos"), denied Trimm's application. (T. 14-22, 27-50). The Appeals Council declined review; Trimm then instituted this proceeding.

### III. Commissioner's Decision

ALJ Ramos utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act.[4] At Step 2, he found that Trimm suffers from certain mental conditions that, separately and

---

[3] General Educational Development ("GED")tests are a group of subject tests which, when passed, certify that the test taker has high school-level academic skills. Generally, States award a Certificate of High School Equivalency or similarly titled credential to persons who meet the passing score requirements.

[4] The procedure is "sequential" in the sense that when a decision can be reached at an early step, remaining steps are not considered. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

collectively, are "severe impairments." (T. 16). At Step 3, ALJ Ramos found that these impairments are not so extreme in degree as to be presumptively disabling.[5] (T. 17).

ALJ Ramos made a predicate finding of "residual functional capacity."[6] He found that Trimm retains ability to perform a full range of work at all exertional levels, but with certain non-exertional mental limitations that limit him to unskilled work.[7] (T. 18). Since Trimm has no past relevant work (Step 4), the burden then shifted to the Commissioner to show at Step 5 that jobs which Trimm can perform exist in significant numbers.[8]

---

[5]  The Commissioner publishes a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected.  20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  Listed impairments are presumptively disabling.  *See* 20 C.F.R. § 416.920(a)(4)(iii), (d).

[6]  "Residual functional capacity" refers to what persons can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain. *See Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999); *see also* 20 C.F.R. § 416.945(a)(3).

[7]  ALJ Ramos's complete "residual functional capacity" finding was:

> The claimant retains the residual functional capacity to perform a full range of work at all exertional levels as well as the ability to understand and follow simple instructions and directions; perform simple tasks with intermittent supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact with other coworkers to the extent necessary to carry out simple tasks; complete simple tasks without the need for frequent supervision and interact with supervisors on an intermittent basis throughout the workday, and handle reasonable levels of simple work-related stress in that he can make simple decisions directly related to the completion of his tasks.

(T. 18).

[8]  *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *see also DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998); *Berry*, 675 F.2d at 467; 20 C.F.R. § 416.966.

ALJ Ramos consulted Medical–Vocational Guidelines commonly referred to as "the grids."[9] (T. 21). He concluded that a finding of "not disabled" was appropriate under the framework of section 204.00. (*Id*.). Consequently, Trimm's application was denied on the basis that his impairments do not prevent his performance of substantial gainful employment. (*Id*.).

## IV. Points of Alleged Error

Trimm's brief articulates four "questions" stated verbatim in the note below.[10] Restated as points of error, Trimm argues that ALJ Ramos erred in failing:

1. to find that Plaintiff's ADHD is a "severe" impairment;
2. to find Plaintiff suffers from a listing-level intellectual deficit and meets Listing 12.05(C);
3. to properly calculate Plaintiff's residual functional capacity and apply the treating physician rule; and

---

[9] The Medical Vocational Guidelines are a matrix of general findings established by rule as to whether work exists in the national economy that a person can perform. They "take into account a claimant's RFC, as well as [his] age, education, and work experience." *Calabrese v. Astrue*, 358 Fed. App'x 274, 276 & n. 1 (2d Cir. 2009) (summary order) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)). When properly applied, they ultimately yield a decision of "disabled" or "not disabled." *Zorilla v. Chater*, 915 F. Supp. 662, 667 & n. 2 (S.D.N.Y. 1996).

[10]
```
1.   Did the Commissioner erroneously fail to find that Plaintiff's
     ADHD is a "severe" impairment?

2.   Did the Commissioner erroneously fail to find Plaintiff
     suffers from a listing-level intellectual deficit and meets
     Listing 12.05(C);;

3.   Did the Commissioner erroneously fail to properly calculate
     Plaintiff's residual functional capacity and to properly apply
     the treating physician rule; and,

4.   Did the Commissioner erroneously fail to support with
     substantial evidence his conclusion that there is significant
     work in the national economy that Plaintiff could perform.
```
(Dkt. No. 8, p. 2).

4. to support with substantial evidence his finding that there is significant work in the national economy that Plaintiff could perform.

(Dkt. No. 8, pp. 2, 10-22).

## V. Discussion and Analysis

*A.   Step 2 Severity Findings*

1. Findings

ALJ Ramos found that Trimm has severe impairments consisting of borderline intellectual functioning ("BIF") and depression. (T. 16). He declined to find other alleged impairments as severe, stating "[t]here is no objective medical evidence showing that the claimant has any additional severe impairments, alleged or otherwise." (*Id.*).

2. Trimm's Challenge

Trimm argues that ALJ Ramos erred in declining to find another alleged impairment, attention deficit hyperactivity disorder ("ADHD"), as a severe impairment. Trimm points to numerous diagnoses of ADHD in his medical treatment records, to school reports of behavioral difficulties in daydreaming and distractibility, and to his own subjective testimony of being easily frustrated and distracted. Trimm deduces that ALJ Ramos's failure to consider his ADHD and its functional impact denied Trimm his right to have this impairment "fully and properly considered throughout the disability review process." (Dkt. No. 8, p. 15).

The Commissioner responds that ALJ Ramos did not err because treatment notes from Trimm's treating psychiatrist repeatedly mentioned ADHD as only a *provisional* diagnosis. Additionally, the Commissioner argues that ALJ

Ramos's finding is supported by substantial evidence in any event because a consultative psychologist did not diagnose ADHD. (Dkt. No. 17, pp. 8-9).

### 3. Governing Principles

"Impairments" are "anatomical, physiological, or psychological abnormalities . . . demonstrable by medically acceptable clinical and laboratory techniques." *See* 42 U.S.C. § 423(d)(3). "Severe impairments" significantly limit an individual's physical or mental ability to do basic work activities.[11] 20 C.F.R. § 416.920(c); *see also* SSR 85–28, TITLES II AND XVI: MEDICAL IMPAIRMENTS THAT ARE NOT SEVERE, 1985 WL 56856, at *3-4 (SSA 1985).

The phrase "significantly limits" has been judicially construed. In this Circuit, a Step 2 severity inquiry is not tantamount to an ultimate determination of disability; rather it serves only to "screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Consequently, "[a] finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' . . . [with] . . .'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)).

---

[11] Regulations define "basic work activities" as "abilities and aptitudes necessary to do most jobs," examples of which include:

```
(1) physical functions such as walking, standing, lifting, pushing,
pulling, reaching, carrying, or handling; (2) capacities for seeing,
hearing, and speaking; (3) understanding, carrying out, and
remembering simple instructions; (4) use of judgment; (5) responding
appropriately to supervision, co-workers and usual work situations;
and (6) dealing with changes in a routine work setting.
```

20 C.F.R. § 416.921(b).

4. <u>ADHD Evidence</u>

   a. *School Records*

School records prior to actual medical diagnoses documented behavioral issues such as "daydreaming, distractibility, and activity level." (T. 117). Trimm was observed to be easily distracted. (T. 118). At an annual review in 1999, school notes refer to Trimm as a "fidgeter." (T. 156). A school psychologist recommended that an evaluation from 1996 be shared with Trimm's pediatrician "to assess the possibility of deficits in attention." (T. 121).

   b. *Treating Psychiatrist Records*

Trimm was first diagnosed with ADHD, combined type (provisional diagnosis), on March 31, 2011, by Dr. Sara Nelson, M.D., a psychiatrist with St. Lawrence Psychiatric Center, Ogdensburg Mental Health Clinic. (T. 292). Dr. Nelson prescribed Trileptal, a medication to treat irritability, aggression, and impulsivity. (*Id*.). In a follow-up psychiatric evaluation dated April 14, 2011, Dr. Nelson reaffirmed her provisional diagnosis of ADHD, combined type. (T. 279-80).

In June 2011, Dr. Nelson again saw Trimm who, despite reporting ADHD-medication side effects of depression, sought to renew his Trileptal prescription, stating it contributed to temper control. (T. 304). Dr. Nelson renewed the prescription; however, she found "no urgency to reassess for ADHD as Mr. Trimm is not doing anything he needs to concentrate on." (*Id*.). Based on treatment notes, this prescribed medication produced mixed results.[12]

---

[12] At times, it is reported that Trimm believed the medication is helping and his temper is more under control. (T. 294, 304, 305, 306, 311, 316, 317, 325, 326). Other times, Trimm believed he needed a stronger dose of medicine or even a lesser dose. (T. 295, 297, 299, 300-01, 323). In February 2012, Dr. Nelson noted that "Mr. Trimm has said he benefits from taking Vyvanse, but on review of chart, the evidence is equivocal." (T. 327).

Over a year after initially diagnosing Trimm with ADHD, in April 2012, Dr. Nelson noted that "ADHD diagnosis remains provisional because his learning disorder and intellectual limitations made ADHD sx [symptoms] difficult to assess." (T. 331).

In November, 2011, Trimm provided the Social Security Administration with Recent Medical Treatment and Claimant's Medication forms reflecting treatment by Dr. Nelson with medication for ADHD. (T. 237-38). And, in a November, 2011, Complete Medical Report (Mental) form, Dr. Nelson notes one of her diagnoses as "attention deficit hyperactivity disorder (combined type-inattentive + hyperactive/impulsive)." (T. 318).

### c. *Consultative Examining Psychologist Records*

On January 27, 2011, Trimm underwent a psychiatric examination with consultative psychologist Dennis M. Noia, Ph.D. (T. 251-54). Trimm was found to have occasional problems with memory, and occasional problems with concentration. (T. 252). Dr. Noia reported Trimm's attention and concentration otherwise were intact. (T. 253). Trimm reported, however, being on a wait list for psychiatric treatment at Ogdensburg Mental Health Clinic. (T. 251).

### d. *Nonreviewing Medical Consultant Report*

On February 7, 2011, Dr. L. Hoffman, the State agency psychiatric consultant, completed a Psychiatric Review Technique form, finding that Trimm was moderately limited in the area of concentration, persistence, or pace. (T. 265). Dr. Hoffman also completed a Mental Residual Functional Capacity Assessment opining that Trimm was able to understand and remember simple instructions, sustain attention and concentration for simple tasks, respond and relate adequately to others and adapt to simple changes. (T. 271).

*e.     Subjective Testimony*

Trimm testified that he is unable to work because he becomes easily frustrated and distracted. (T. 35). He has issues with anger management, and sometimes loses control and breaks things. (T. 37). He stated that his concentration is "not so great." (T. 38). He acknowledged taking Trileptal for anger and Vyvanse for ADHD, and that they help. (T. 38-39).

5.     Application

Trimm did not specifically identify ADHD as a disabling impairment in either his original application or in his testimony at the evidentiary hearing. His application, however, noted "anger problem," and he testified that he gets "frustrated" and "distracted" easily. (T. 35). Also, his representative, submitted a pre-hearing memorandum alleging ADHD as being among Trimm's severe impairments. (T. 243). And, as both parties emphasize, there are numerous references to attention deficits and/or ADHD in medical, therapy and school records. Thus, ALJ Ramos had a duty to consider ADHD when making his decision.

ALJ Ramos never mentions Trimm's alleged ADHD, except, perhaps, by reverse inference when stating "[t]here is no objective medical evidence showing that the claimant has any additional severe impairments, alleged or otherwise." (T. 16). Indeed, ALJ Ramos appears to have taken pains to *ignore* ADHD evidence. He acknowledged Trimm's representative's prehearing memorandum, but described it as only claiming disability due to impairments initially alleged in his original application–anger problem, depression, learning disability, and speech problems. (T. 19). Similarly, he acknowledged that in March 2011, Trimm began receiving treatment at St. Lawrence Psychiatric Center for

"depressive disorder," but excluded any and all references to Dr. Nelson's diagnoses and treatments for ADHD. (*Id.*).

The Commissioner's *ad hoc* and resourceful forensic argument that ALJ Ramos was free to ignore any abnormality with only a provisional diagnosis is unpersuasive. Such might be the case with only a "rule out" treatment note,[13] but, as the Commissioner acknowledges, "provisional diagnosis" connotes a *strong presumption* that full criteria for a definitive diagnosis ultimately will be met. Dr. Nelson elected not to reassess ADHD further because there was no urgency to do so, and because Trimm's learning disorder and other intellectual limitations made assessment of ADHD symptoms difficult. She did not, however, affirmatively rule out her provisional diagnosis, and, instead, continued to carry ADHD as a diagnosis and prescribe medication to treat it. Dr. Nelson also listed "attention deficit hyperactivity disorder (combined type-inattentive + hyperactive/impulsive)" as one of Trimm's diagnoses in her November 2011, Complete Medical Report (Mental).

The Commissioner's alternative forensic argument (that lack of an ADHD diagnosis from consultative examiner, Dr. Noia suffices as substantial evidence to support a non-severity finding) also is unpersuasive when considered in its unique factual context. Dr. Noia's psychological examination occurred shortly after Trimm filed his claim for benefits. At that time, Trimm had not yet undergone psychiatric assessment by a medical doctor. Dr. Noia necessarily expressed his opinions without benefit of knowledge of Dr. Nelson's subsequent ADHD diagnosis and sustained course of ADHD medication.

---

[13] "Rule out" means to eliminate or exclude something from consideration; it does not constitute a diagnosis. *See Merancy v. Astrue*, No. 3:10cv1982(MRK)(WIG), 2012 WL 3727262, at *7 (D. Conn. May 30, 2012) (citing cases).

Dr. Noia neither considered nor ruled out a diagnosis of ADHD. Under that circumstance, a reasonable mind could not accept Dr. Noia's one-time, early-on, and silent-with-respect-to-ADHD examination findings as affirmative evidence that Trimm does not suffer from ADHD as an impairment.[14]

In short, ALJ Ramos erred when failing to consider ADHD as an impairment, and, in turn, by failing to then assess at Step 2 of sequential evaluation whether it causes more than minimal effect on Trimm's ability to work.

*B.   Harmless Error*

The Commissioner defends ALJ Ramos's Step 2 findings as correct, but argues alternatively that were there such error, it would be harmless because ALJ Ramos found *other impairments* (borderline intellectual functioning and depression) to be severe, and thereafter conducted a 5–step sequential analysis wherein ALJ Ramos purportedly considered *all* of Trimm's impairments. (Dkt. No. 17, p. 9).

1.   Governing Principles

Earlier-mentioned congressional mandates (requiring courts reviewing administrative decrees to take due account of "the rule of prejudicial error" and disregard all administrative errors and defects not affecting "substantial rights")

---

[14] "Substantial evidence" is a term of art. It means less than a "preponderance" (usual standard in civil cases), but "more than a mere scintilla," or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

refer to what modern jurisprudence calls "harmless error doctrine." *See Shinseki v. Sanders*, 556 U.S. 396, 406-08 (2009). Under this doctrine, a reviewing court must reverse and remand when an administrative law judge errs when reaching a decision, unless, as a matter of law, the result could not be affected by the error. *See NLRB v. Enterprise Assoc.*, 429 U.S. 507, 522 n. 9 (1977). In other words, administrative legal error is harmless when a reviewing court confidently concludes that the same result would have been reached had the error not occurred. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").

A variant of this doctrine may apply with respect to Step 2 errors in evaluation of social security disability claims. *All* impairments, *i.e.*, both severe and nonsevere, must be factored into a residual functional capacity determination that precedes Step 4.[15] Several courts conclude that when an administrative law judge identifies *some* severe impairments at Step 2, and then proceeds through subsequent sequential evaluation on the basis of *combined effects* of *all* impairments, including those erroneously found to be nonsevere, an error in failing to identify *all* severe impairments at Step 2 is harmless. *See Stanton v. Astrue*, 370 Fed. App'x 231, 233 n.1 (2d Cir. 2010) (summary order).

---

[15] In making a finding regarding residual functional capacity, administrative law judges must consider all of the claimant's impairments, including impairments that are not severe. *See* 20 C.F.R. §§ 416.920(e), 416.945; SSR 96-8p, TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 1996 WL 374184, at *5 (SSA July 2, 1996).

Conceptually, these cases are sound. It is eminently reasonable to conclude that an error is harmless when it is negated before a final decision. Thus, when *functional effects* of impairments erroneously determined to be nonsevere at Step 2 are fully considered and factored into subsequent residual functional capacity assessments, reviewing courts can confidently conclude that the same result would have been reached absent the Step 2 error.

2. Application

The Step 2 harmless error construct just described is inapplicable here. Because ALJ Ramos did not acknowledge Trimm's ADHD as even being an impairment, severe or nonsevere, he completely failed to mention *any* resulting limitations from ADHD when formulating Trimm's residual functional capacity. Thus, no *functional effects* of Trimm's ADHD were factored into ALJ Ramos's residual functional capacity assessment.[16] Absent that, a reviewing court cannot

---

[16]  One cannot indulge a presumption that ADHD likely has no functional effect on ability to perform ordinary work activities. Numerous scholarly articles document workplace effects of adult ADHD. Dr. Harpin summarizes the phenomenon well as follows:

> As many as 60% of individuals with ADHD symptoms in childhood continue to have difficulties in adult life. Adults with ADHD are more likely to be dismissed from employment and have often tried a number of jobs before being able to find one at which they can succeed. . . .. In the workplace, adults with ADHD experience more interpersonal difficulties with employers and colleagues. Further problems are caused by lateness, absenteeism, excessive errors and an inability to accomplish expected workloads.

Harpin, Valerie A., *The effect of ADHD on the life of an individual, their family, and community from preschool to adult life*, Archives of Disease in Childhood 90.suppl 1 (2005), available at http://adc.bmj.com/content/90/suppl_1/i2.full, (last checked April 16, 2014).

Dr. Kessler similarly observes that "children with attention deficit hyperactivity disorder (ADHD) often continue to have symptoms, especially of
(continued...)

conclude that a Step 2 error with respect to severity of a distinct nonexertional mental impairment automatically becomes harmless simply because sequential analysis proceeds through Step 5 solely on the basis of other mental impairments whose functional limitations may be dissimilar.

Neither can a reviewing court conclude that the Step 2 error identified above is harmless under more traditional analysis. Absent this error, ALJ Ramos may have assessed Trimm's mental residual functional capacity more narrowly. A reviewing court cannot speculate as to whether an accurate assessment of functional effects of *all* impairments would have resulted in Trimm retaining mental residual functional capacity to meet basic mental demands of competitive remunerative unskilled work, or whether Medical-Vocational Guidelines would continue to serve as a reliable framework or, whether additional mental limitations resulting from ADHD would significantly

---

[16](...continued)
inattentativeness, in adulthood" . . . and . . . "[t]he effects of adult ADHD on work performance are especially noteworthy." Kessler concluded that ADHD was associated with a statistically significant decrement in on-the-job work performance. Kessler, Randy C., *The prevalence and workplace costs of adult attention deficit hyperactivity disorder in a large manufacturing firm*, Psychological Medicine (2009),39,137-147, available at, http://www.fireworksonthebrain.com/PSM_Kessler-137.pdf, (last checked April 16, 2014).

Based on ten national surveys, Dr. DeGraff concluded that ADHD is significantly related to overall workplace role performance. Workers with ADHD have an average and statistically significant excess 8.4 days out of role, 21.7 days of decreased work quantity, and 13.6 days of decreased work quality on an annualized basis. The projections of individual-level effects to the civilian labor force yielded an estimate that 143.8 million lost days of productivity occur each year associated with ADHD. *See* DeGraff, Ron, *The prevalence and effects of Adult Attention-Deficit/hyperactivity Disorder (ADHD) on the performance of workers: Results from the WHO World Mental Health Survey Initiative*, Occupational Environmental Medicine Dec. (2008), 65(12) 835-842, available at, http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2665789,(last checked April 16, 2014).

erode Trimm's occupational base and thereby require introduction of testimony by a vocational expert.

A reviewing court, therefore, cannot confidently conclude that ALJ Ramos would have reached the same result absent his error in failing to assess severity of Trimm's ADHD. This precludes a harmless error finding.

## VI.  Remaining Points

Trimm's remaining points of error relate to ALJ Ramos's Step 3 analysis of his borderline intellectual function, his mental residual functional capacity finding, weighting of medical source opinions, and whether expert testimony was required to determine if jobs exist in significant numbers that, factoring all of his nonexertional limitations, he could perform. These need not be addressed on their merits because (a) it is pointless to do so until Trimm's ADHD is factored into the equation, and (b) the outcome of this case will not change whether or not they are meritorious based on the existing record.

Addressing these additional issues administratively on remand, however, may avoid a second costly and lengthy action for judicial review.

## VII.  Recommendation

The Commissioner's decision denying disability benefits should be REVERSED and the case REMANDED pursuant to 42 U.S.C. § 405(g), sentence four, for further proceedings.

## VIII. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the  16  day of     April     2014.

*/s/ Earl S. Hines*

Earl S. Hines
United States Magistrate Judge